# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF P.G., | ) | |
| **through his parents, A.G. and R.G.;** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:19-cv-00288** |
| | ) | **Judge Aleta A. Trauger** |
| **GENESIS LEARNING CENTERS** | ) | |
| **d/b/a GENESIS ACADEMY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

P.G., acting through his parents, has filed a Motion to Determine Jurisdiction (Docket No. 10), to which Genesis Learning Centers ("Genesis") has filed a Response (Docket No. 15), and P.G. has filed a Reply (Docket No. 16). For the reasons set out herein, the motion will be granted.

## I. BACKGROUND[1]

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, "offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education'—more concisely known as a FAPE—to all children with certain physical or intellectual disabilities." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748 (2017) (citing 20 U.S.C. §§ 1401(3)(A)(i), 1412(a)(1)(A)). "[T]he IDEA gives the 'primary responsibility . . . for choosing the educational method most suitable to the child's needs . . . to state and local educational agencies"— commonly referred to as "SEAs" and "LEAs"—which work "in cooperation with the parents or guardian of the child." *Long v. Dawson Springs Indep. Sch. Dist.*, 197 F. App'x 427, 433–34 (6th

---

[1] Except where otherwise indicated, the facts herein are taken from P.G.'s Complaint (Docket No. 1) and Genesis's Answer (Docket No. 9).

Cir. 2006) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 207 (1982)). At the heart of this collaborative process is the child's individualized education program, or "IEP." "The IDEA establishes procedures by which school officials, parents, and the student can collaborate to create an IEP" that takes into account the unique needs of the child, the special education expertise of the educators, and the voice of the child's parents or guardians as advocates for the child's best interests and educational needs. *Id.* at 432 (citing 20 U.S.C. §§ 1401(11), 1414(d); *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 368 (1985)). IDEA regulations recognize that a private school may be charged with administering a child's IEP but provide that, "[e]ven if a private school or facility implements a child's IEP, responsibility for compliance with this part remains with the public agency and the SEA." 34 C.F.R. § 300.325(c).

"The IDEA . . . provides for administrative procedures to resolve disputes when the people involved in the creation of an IEP are not able to agree on its substance." *Id.* (citing 20 U.S.C. § 1415(b)); *see* 20 U.S.C. § 1415(b)(6), (f)–(g), (k). "[A]ny party" is entitled to present an administrative complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A). The state is required to provide an impartial administrative due process hearing related to that complaint, which may be performed by either the LEA or the SEA. If the hearing is performed by the LEA, however, the LEA's determination can be appealed to the SEA. 20 U.S.C. § 1415(f)(1)(A), (g)(1). "Any party aggrieved by the findings and decision made under" the administrative complaint process "shall have the right to bring a civil action with respect to the complaint presented" in either state or federal court. 20 U.S.C. § 1415(i)(2)(A); *see also S.E. v. Grant Cty. Bd. of Educ.*, 544 F.3d 633, 642–43 (6th Cir. 2008).

Genesis is a private company that operates schools, including Nashville's Genesis Academy. (Docket No. 1 ¶ 2.) Tennessee's education statutes permit local school districts to "make contracts with the proper authorities of private schools . . . whereby the county public elementary and high schools may be taught in the private . . . schools." Tenn. Code Ann. § 49-2-109. In February 2014, the Board of Education of Rutherford County, Tennessee, entered into a contract with Genesis, pursuant to which Genesis would provide special education services to Rutherford County students. (Docket No. 1 ¶ 16; Docket No. 10-1.) The contract required Genesis to participate in the formulation of students' IEPs and provide services consistent with those IEPs. (Docket No. 10-1 at 4–5.) Genesis agreed that all of the services and programs it provided to Rutherford County students under the contract would "comply with all relevant Federal and State of Tennessee laws and regulations." (*Id.* at 6.) With regard to the students' procedural rights, Genesis agreed that it, along with the Board of Education, would "insure [sic] that the rights and privileges available to students enrolled in the Rutherford County School System shall be available to students with disabilities served by GENESIS, including due process procedures . . . ." (*Id.* at 5.) The contract between Rutherford County and Genesis was renewed in June of 2018. (Docket No. 10-1 at 1.)

P.G. is a child with a disability who lives in Rutherford County. (Docket No. 1 ¶ 1.) P.G. attended Rutherford County public schools as a preschooler during the 2015–16 school year and as a kindergartener for part of the 2016–17 school year. Near the end of that school year, however, he was transferred to Genesis Academy.[2] P.G. completed kindergarten at Genesis Academy and

---

[2] Although the record in this case does not reveal all of the circumstances surrounding P.G.'s transfer, an earlier-filed case shows that his parents believe that he was subject to abuse by a teacher at the public kindergarten that he attended for the first part of the 2016–17 school year. *See P.G. ex rel. R.G. v. Rutherford Cty. Bd. of Educ.*, 313 F. Supp. 3d 891, 895 (M.D. Tenn. 2018). That case, which named only the Rutherford County Board of Education as a defendant, was dismissed in part for failure to exhaust, with the remaining claims later voluntarily dismissed pursuant to a motion by P.G.

continued to attend the school for the entirety of his first-grade year. (*Id.* ¶¶ 17–18.) P.G., through his parents, alleges that, while at Genesis Academy, he was subjected to "numerous repeated and unnecessary restraints and isolations by Genesis Academy staff." (*Id.* ¶ 20.)

Tennessee, in its Special Education Behavior Supports Act ("SEBSA"), Tenn. Code Ann. § 49-10-1301 *et seq.*, has set forth requirements for when and how restraint and isolation may be used with students receiving special education in Tennessee schools. District courts in the state, including this one, have held that the IDEA, which defines "FAPE" to include compliance with state special education standards, requires compliance with SEBSA. *See, e.g.*, *J.M. ex rel. Mata v. Tennessee Dep't of Educ.*, 358 F. Supp. 3d 736, 744–47 (M.D. Tenn. 2018); *I.L. ex rel. Taylor v. Knox Cty. Bd. of Educ.,* 257 F. Supp. 3d 946, 964 (E.D. Tenn. 2017); *see also Doe ex rel. Doe v. Bd. of Educ. of Tullahoma City Sch.*, 9 F.3d 455, 457 (6th Cir. 1993) ("[A] school district [that] complies with federal law . . . may still violate the Act if it fails to satisfy more extensive state protections that may also be in place.") (quoting *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 620 (6th Cir. 1990)).

In the wake of the alleged SEBSA violations, P.G. filed an administrative due process complaint against the Rutherford County Schools and Genesis. (Docket No. 1 ¶ 6.) P.G. alleged that both defendants had violated the IDEA, but he also included claims under Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* P.G.'s inclusion of non-IDEA claims in his administrative complaint is consistent with the requirement, recognized by Congress and the Supreme Court, that some non-IDEA claims seeking relief that overlaps with the IDEA must undergo the IDEA exhaustion process. *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 754 (2017); 20 U.S.C. § 1415(l).

On February 8, 2019, Genesis filed a motion to dismiss, arguing that, as a private company and neither an LEA or SEA, it was not subject to a claim under the IDEA. (*See* Docket No. 10-2 at 1.) Administrative Judge Phillip R. Hilliard granted the motion and dismissed the IDEA claim against Genesis. Judge Hilliard also raised questions, however, about whether he had jurisdiction to consider the remaining claims against Genesis—an issue that Genesis has apparently raised in its reply. Judge Hilliard requested additional briefing addressing the issue. (*Id.* at 2–3.) After briefing and oral argument, Judge Hilliard concluded that he, as an administrative law judge for the Tennessee Secretary of State's Administrative Procedures Division, lacked jurisdiction to consider the Section 504 and ADA claims against Genesis. On March 25, 2019, he entered a final Order dismissing those claims. (Docket No. 10-3 at 6.)

On April 8, 2019, P.G. filed his Complaint with this court, naming Genesis as the only defendant because his claims against Rutherford County had not yet been administratively exhausted. (Docket No. 1.) As he had in the administrative proceeding, P.G. pleaded claims under the IDEA, ADA, and Section 504. (*Id.* ¶¶ 6, 26.) He also asserted, however, that the court's consideration of those claims on the merits would be premature, because the administrative law judge had erred in (1) concluding that no claim existed against Genesis under the IDEA and (2) concluding that he lacked jurisdiction with regard to the other federal claims. P.G. asks that the court remand the claims to the administrative law judge and only address the merits in the alternative. (*Id.* ¶ 25–26.) P.G. seeks the following relief, in the event that the court does not remand the case: (1) a declaratory judgment that Genesis was in violation of the IDEA, Section 504, the ADA, and ADA regulations; (2) an injunction directing Genesis "to take all steps necessary to bring its educational facility and/or place of public accommodation into full compliance with the requirements set forth in the IDEA, Section 504, and ADA"; (3)

compensatory educational relief, such as an appropriate alternative private placement; (4) monetary damages under Section 504; and (5) attorney's fees. (Docket No. 1 at 7–8.)

On May 24, 2019, P.G. filed a Motion to Determine Jurisdiction (Docket No. 10), asking the court to hold that the administrative law judge has jurisdiction over P.G.'s claims against Genesis and, therefore, P.G. should administratively exhaust those claims before filing suit in federal court. Genesis filed a Response opposing the motion and asking the court to exercise its jurisdiction over the case and proceed ordinarily to an initial case management conference. (Docket No. 15 at 10–11.) Although Genesis continues to take the position that P.G. has no IDEA claim against it, it has not yet moved to have that claim dismissed. According to P.G., the administrative law judge has stayed proceedings against Rutherford County pending the resolution of this appeal. (Docket No. 10 at 2.)

## II. NATURE OF THE MOTION

P.G. has styled his motion as a Motion to Determine Jurisdiction, under the theory that the administrative law judge's dismissal was inappropriate and that the administrative tribunal, not this court, has jurisdiction over P.G.'s substantively unexhausted claims. (*See* Docket No. 10 at 2 (discussing "whether this District Court or the ALJ . . . has jurisdiction over Genesis").) There are, however, two problems with that premise. First, the Sixth Circuit, in recent years, has, at the very least, "implied that the IDEA's exhaustion requirement is not jurisdictional in nature." *Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*, 655 F. App'x 423, 430–31 (6th Cir. 2016) (collecting cases); *see also L.G. ex rel. G.G. v. Bd. of Educ. of Fayette Cty., Ky.*, No. 18-5715, 2019 WL 2419021, at *4 n.3 (6th Cir. June 10, 2019) ("This circuit has not determined whether exhaustion under the IDEA is a jurisdictional requirement. We note, however, that the Supreme Court has recently held that Title VII's administrative-exhaustion requirement is not jurisdictional but is,

instead, a mandatory claims-processing rule.") (citing *Fort Bend County v. Davis*, 139 S.Ct. 1843 (2019); *Gibson*, 655 F. App'x at 430–31). Accordingly, it is far from clear that a failure to appropriately complete the administrative process would deprive this court of jurisdiction. Second, and perhaps more importantly, even if the exhaustion requirement were jurisdictional, it would not bar jurisdiction here because P.G. did not actually fail to exhaust these claims. He brought the claims before the administrative law judge. He pursued them, and, at least at that level and with regard to this defendant, he lost. He did everything the IDEA requires him to do.

P.G.'s motion appears to the court to be more properly construed as a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Pursuant to Rule 7(a), "[t]he pleadings are closed after the filing of the complaints, answers, and any replies ordered by the court." *Forest Creek Townhomes, LLC v. Carroll Prop. Mgmt., LLC*, 695 F. App'x 908, 913 (6th Cir. 2017) (citing 5C Wright & Miller, Fed. Prac. & Proc. § 1367). Genesis has filed its Answer, which contained no counterclaims, and the court has ordered no replies. (Docket No. 9.) A Rule 12(c) motion is, therefore, permissible. The court will construe P.G.'s motion as a motion for judgment on the pleadings, based on the argument that, under the agreed facts, P.G. is entitled to a judgment of reversal and remand based on the fact that the administrative law judge erred in concluding, as a matter of law, that P.G. had no IDEA claim against Genesis and/or the administrative law judge lacked jurisdiction over the remaining claims.

### III. LEGAL STANDARD

The standard for reviewing a motion for judgment on the pleadings is the same as that applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Hayward v. Cleveland Clinic*

*Foundation*, 759 F.3d 601, 608 (6th Cir. 2014). For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. *Crossville, Inc. v. Kemper Design Center, Inc.*, 2010 WL 2650731 at * 2 (M.D. Tenn. July 2, 2010) (citing *JPMorgan Chase Bank. N.A. v. Winget*, 510 F.3d 577, 581–82 (6th Cir. 2007)).

In ruling on a motion under Rule 12(c), the court may look only at the "pleadings." The term "pleadings" includes both the complaint and the answer. Fed. R. Civ. P. 7(a). The court may consider documents attached to the complaint and the answer, so long as they are central to the plaintiff's claim and of undisputed authenticity. *Beasley* at * 3. Documents attached to a motion are considered part of the pleadings only if they are referred to in the plaintiff's complaint and are central to its claim. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

## IV. ANALYSIS

### A. IDEA Claims Against Private Contractors

Genesis argues that it cannot be subject to suit under the IDEA because it is not a state or local educational agency. A state educational agency is "the State board of education or other agency or officer" with equivalent duties. 20 U.S.C. § 1401(32). That clearly does not describe Genesis. The definition of "local educational agency" is slightly more complex, but Genesis is correct that, to qualify, an entity must be either "a public board of education," a "public authority," some other form of "public institution or agency having administrative control and direction of a public elementary school or secondary school," or an "educational service agency," which is defined as a type of "regional public multiservice agency." 20 U.S.C. § 1401(5)(A), (19). Because Genesis is a private entity, it falls into none of those categories.

Nothing in the IDEA, however, expressly limits a cause of action to state or local educational agencies. The IDEA includes language limiting who may file a cause of action and what the cause of action may be about, but "does not specifically name the party against whom such an action may be brought."[3] *Ullmo ex rel. Ullmo v. Gilmour Acad.*, 273 F.3d 671, 679 (6th Cir. 2001). The limitations on the cause of action that do exist, moreover, do not, on their face, preclude a cause of action such as P.G.'s. A claim under the IDEA must be brought by a "party aggrieved," 20 U.S.C. § 1415(i)(2)(A), and that grievance must arise out of a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of [a] child, or the provision of a free appropriate public education to such child," 20 U.S.C. § 1415(b)(6)(A). *See Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 628 (6th Cir. 2010) (holding that a school district cannot sue as an aggrieved party where its allegation does not "relat[e] to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."). P.G. is undisputedly aggrieved by his alleged treatment at Genesis Academy, and his grievances do pertain to the provision of his FAPE. On its face, then, his claim against Genesis meets the basic requirements of an IDEA claim.

---

[3] The IDEA's implementing regulations do appear to assume that the defendant will typically be an LEA, although they never suggest that the LEA is the only option. *See* 34 C.F.R. §§ 300.500–.536. This court and many others have held that, at the very least, SEAs can also be sued under the IDEA, a holding that the Sixth Circuit has characterized as consistent with the "language and structure of [the] IDEA." *Ullmo*, 273 F.3d at 679 (quoting *St. Tammany Parish Sch. Bd. v. Louisiana*, 142 F.3d 776, 784 (5th Cir. 1998)); *see, e.g., Pachl v. Seagren*, 453 F.3d 1064, 1070 (8th Cir. 2006); *St. Tammany Par. Sch. Bd. v. State of La.*, 142 F.3d 776, 784 (5th Cir. 1998); *Gadsby ex rel. Gadsby v. Grasmick*, 109 F.3d 940, 953 (4th Cir. 1997); *S.P. v. Knox Cty. Bd. of Educ.*, 329 F. Supp. 3d 584, 594 (E.D. Tenn. 2018); *J.M. v. Dickson Cty. Sch. Dist.*, No. 3:17-cv-00405, Docket No. 31 at 10 (M.D. Tenn. Dec. 14, 2017); *Morgan Hill Concerned Parents Ass'n v. California Dep't of Educ.*, 258 F. Supp. 3d 1114, 1125 (E.D. Cal. 2017); *Kalliope R. ex rel. Irene D. v. N.Y. State Dep't of Educ.*, 827 F. Supp. 2d 130, 141 n.3 (E.D.N.Y. 2010); *Fetto v. Sergi*, 181 F. Supp. 2d 53, 72 (D. Conn. 2001); *Corey H. v. Bd. of Educ. of City of Chicago*, 995 F. Supp. 900, 913 (N.D. Ill. 1998).

Nevertheless, it is unlikely that Congress actually intended for the IDEA to allow a cause of action under the statute against any defendant against whom a child or his parent has a special education-related grievance. One can imagine grievances relating to the provision of a child's FAPE against not only school districts, states, and contractors, but also individual teachers and school personnel—or even the child's peers. A child might also, for example, have a genuine FAPE-related grievance against his private physician on the ground that the physician's misdiagnosis of the child led to a defective IEP. There is no reason to believe that Congress, in creating the IDEA cause of action, intended to provide an all-purposes avenue for resolving every dispute that in some way relates back to a child's special education. The question, then, becomes where the boundaries of the cause of action lie.

Genesis argues that a cause of action should be limited to the entities with statutory responsibilities under the IDEA itself—that is, SEAs and LEAs—and not third parties whose responsibilities arise only out of IDEA-related contracts. This reasoning persuaded the Second Circuit in *St. Johnsbury Academy v. D.H.*, 240 F.3d 163 (2d Cir. 2001), which involved an IDEA claim against a private school that resembled a public agency almost as closely as any private entity could. The school district at issue had no publicly-run high school and had instead granted a private school, St. Johnsbury Academy, the primary responsibility of educating its students in those grades under a Vermont statute that allowed the district to "designate an approved independent school as the public high school of the district." *Id.* (citations omitted). The "overwhelming majority" of the district's high school-aged students attended the Academy, with their tuition paid in public funds, although the Academy was technically allowed to refuse admission to particular students. *Id.* at 166. The only way a student in the district could attend any other school with public funds was if the student was allowed to do so "in [the school district's]

sole discretion." *Id.* (citations omitted). Nevertheless, when the plaintiff sued the Academy under the IDEA—and prevailed both in the administrative process and in district court—the Second Circuit vacated the judgment on the ground that the Academy, as a private entity, was not an appropriate defendant under the IDEA. *Id.* at 171.

The Second Circuit explained that, although the IDEA "expressly contemplates that [some] children will be 'placed in . . . [private] schools . . . by the State or appropriate local educational agency as the means of' complying with" the IDEA, the terms of the statute ultimately "obligate[] the '*State*'—not the private school—to 'ensure' that such children 'are provided special education and related services, in accordance with an individualized education program.'" *Id.* at 171 (quoting 20 U.S.C. § 1412(a), (a)(10)(B)(i)(emphasis added)). As the court observed, the IDEA itself imposes no responsibilities directly on any private school. Any obligations of the school would arise instead out of agreements with the state, school district, and/or parents. The Second Circuit stressed, therefore, that holding that a private school cannot be sued under the IDEA does not mean that such a school will lack enforceable duties related to a student's education. Under the IDEA "one responsibility of [public educational] agencies is to 'mak[e] arrangements' for the implementation of IDEA standards with private institutions that are willing and able to strike a deal." *Id.* at 173 (quoting 34 C.F.R. § 300.554). It is the "arrangements" underlying that "deal"— such as a memorandum of understanding or other contract between a district and a private school— that would give rise to enforceable duties on behalf of the private entity. *Id.*

The Sixth Circuit addressed a similar issue in *Ullmo ex rel. Ullmo v. Gilmour Academy*, and came to the same conclusion. 273 F.3d at 678–79. In *Ullmo*, a disabled student and his parents sued his former school—a private academy in which the family had voluntarily enrolled the child—under the IDEA. The plaintiffs argued that the school could be sued under the IDEA

because it had "served as a[n] LEA," in that it had "received both federal and state education funds." *Id.* The Sixth Circuit rejected that argument on two grounds: first, that the defendant had "received public funds only for general education purposes, as opposed to funds provided under the IDEA for disability education"; and, second, because the statutory definition of LEA categorically excludes private entities. *Id.* ("Furthermore, the IDEA defines a LEA as a public administrative body charged with overseeing public schools. The Ullmos concede that Gilmour is a private institution." (citation omitted).) As P.G. points out, the first reason that the Sixth Circuit treated as determinative does not apply here; Genesis received special education funding that had been disbursed under the IDEA. If *Ullmo* had ended its reasoning there, then P.G. would be correct that this case is thoroughly distinguishable. *Ullmo*, however, also adopted reasoning, closely mirroring the Second Circuit's in *St. Johnsbury Academy*, based on the statutory definitions of "educational agency." *Id.* at 679. Indeed, the Sixth Circuit favorably cited *St. Johnsbury Academy* in support of its position. *Id.* While Genesis Academy was certainly more like a public school than the institution in *Ullmo* appears to have been, *Ullmo* treated the formal public/private distinction as capable of being determinative in and of itself, regardless of practical differences. In other words, while this case is, in a vacuum, factually distinguishable from *Ullmo*, the reasoning of *Ullmo* forecloses this court from relying on that factual distinction to reach a different result.[4]

P.G. urges the court to adopt the reasoning of the District of New Jersey in *P.N. v. Greco*, 282 F. Supp. 2d 221, 236 (D.N.J. 2003), in which a district court recognized the viability of an IDEA claim against a private contractor. In that case, the plaintiff student had attended a private

---

[4] It is also immaterial that Rutherford County participated in the initial decision to send P.G. to Genesis Academy, whereas the child at issue in *Ullmo* attended his school by his and his parents' choice. Nothing in the reasoning of any of the cited cases—including the case most supportive of P.G.'s position, discussed *infra*—hinges on that distinction. Moreover, if P.G.'s parents objected to P.G.'s placement at Genesis Academy, that placement was an independent IDEA issue that they could have challenged.

school that, like Genesis Academy, had contracted with public authorities to provide IDEA-compliant special education and related services. The District of New Jersey concluded that the private school could be sued under the IDEA because it was subject to New Jersey state regulations implementing the law. *Id.* at 237. Although P.G. has identified Tennessee statutes permitting school districts to contract with private companies, including in furtherance of their IDEA duties, he has not identified Tennessee regulations comparable to those at issue in *P.N.* In any event, whatever the merits of that court's analysis in that case, its conclusion cannot be squared with *Ullmo*, which held that the determinative issue was whether or not an entity is an educational agency under the Act. *See also McElroy v. Pac. Autism Ctr. for Educ.*, No. 14-CV-04118-LHK, 2016 WL 3029782, at *11 (N.D. Cal. May 27, 2016) ("With the exception of the District of New Jersey, every court to have considered the issue has concluded that the IDEA does not apply to private schools because private schools are not a State educational agency, State agency, or local educational agency." (internal quotation marks omitted)) (collecting cases).

Finally, P.G. argues that Genesis is liable to him because he is a third-party beneficiary to the contract between Genesis and Rutherford County. Under Tennessee law, "a third party may seek to recover under a contract, but the third party bears the burden of proving, from the terms of the contract or the circumstances surrounding its execution, that, at the time of contracting, he was an intended third-party beneficiary of the contract." *Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886, 899 (Tenn. 2016) (citations & emphasis omitted). P.G., however, has not given the court any occasion to consider whether he was an intended third-party beneficiary of the contract between Genesis and the county, because he has not filed a claim for breach of contract. By limiting himself to federal statutory claims, P.G. must show that he has a plausible cause of action based on the elements and limitations of those particular statutes. With regard to the IDEA, he has

failed to do so, because Sixth Circuit law does not recognize Genesis as an appropriate IDEA defendant.

## B. Jurisdiction of the Administrative Law Judge of the ADA and Section 504 Claims

### 1. Scope of Jurisdiction

Tennessee grants state administrative law judges, such as Judge Hilliard, jurisdiction to consider special education cases in Tenn. Code Ann. § 49-10-606(a), which reads:

> Special education due process cases shall be heard by administrative law judges employed by the secretary of state. In addition, the secretary of state may contract with no more than three (3) administrative law judges who are currently serving under an appointment by the department of education to hear special education due process cases, to serve as part-time administrative law judges to hear special education due process cases. Administrative law judges shall have jurisdiction to hear complaints arising under the federal Individuals with Disabilities Education Act (20 U.S.C. § 1400 et seq.), and state special education laws.

*Id.* Genesis focuses on the last sentence of that subsection, explicitly giving administrative law judges jurisdiction over "complaints arising under the [IDEA] and state special education laws." Genesis argues that, because the only federal statute mentioned is the IDEA, then Tennessee administrative law judges lack jurisdiction to consider claims brought pursuant to other federal statutes, namely Section 504 and the ADA. The only remaining possible claim against Genesis would, therefore, be an IDEA claim, which Genesis argues would categorically fail as a matter of law because Genesis is a private entity.

At least as long as one reads the final sentence of § 49-10-606(a) in isolation, Genesis's interpretation that it excludes ADA and Section 504 claims is plausible. Tennessee courts often follow the rule of statutory interpretation that "the expression of one thing implies the exclusion of all things not expressly mentioned." *Blount Cty. Bd. of Educ. v. City of Maryville*, No. E2017-00047-SC-R11-CV, 2019 WL 2022364, at *4 (Tenn. May 8, 2019). By that reasoning, mentioning one federal statute could be construed as excluding others. It is worth noting, however, that nothing

14

about that argument hinges on Genesis's status as a private entity. The language on which Genesis relies makes no distinction between different types of defendants. If Tenn. Code Ann. § 49-10-606(a) categorically forbids an administrative law judge from considering federal non-IDEA claims, then it does so with regard to ADA and Section 504 claims against school districts as well—despite the fact that the IDEA, in 20 U.S.C. § 1415(l), expressly requires that some ADA and Section 504 claims be put through the same administrative review process that governs the IDEA.[5]

The implications of such a reading would be significant. The Tennessee Department of Education, in exchange for the state's receipt of IDEA funds, pledges to the U.S. Department of Education that, in Tennessee, "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.500 through 300.536 *and in accordance with 20 U.S.C. [§] 1412(a)(6)*." *See* U.S. Dep't of Educ., Tenn. FY2018 Grant Award Letter, encl. A at II-2 (emphasis added).[6] For procedures to be "in accordance with 20 U.S.C. [§] 1412(a)(6)" they must also comply with 20 U.S.C. § 1415, which is expressly incorporated by reference into 20 U.S.C. § 1412(a)(6)(A). Included in 20 U.S.C. § 1415, of course, is § 1415(l), the subsection providing that the IDEA "shall be construed" to require exhaustion, via the IDEA administrative process, for certain qualifying Section 504 and ADA claims. In other words, if it is indeed the case that Tennessee does not provide children and their parents with access to administrative law judges

---

[5] This issue, moreover, could not be avoided merely by holding that an administrative law judge considering an IDEA complaint against an educational agency has pendant jurisdiction over other federal claims against the same defendant, because § 1415(l) requires exhaustion of qualifying ADA and Section 504 claims regardless of whether a plaintiff has filed an IDEA claim at all. In order to provide the type of exhaustion contemplated by the IDEA, an administrative forum must be capable of considering the claims of at least some plaintiffs who wish only to proceed under the non-IDEA statutes.

[6] Available at https://www2.ed.gov/fund/data/award/idea/2018partb/tn-enclosurea-2018b.pdf.

with the power to exercise jurisdiction over at least some Section 504 claims and ADA claims, then Tennessee's system diverges from what the IDEA contemplates and could even run afoul of the state's assurances to the federal government in exchange for special education funds. It may be that the limited remedial authority of the administrative law judge means that little action would be taken on at least some aspects of the non-IDEA claims at that level.[7] Nevertheless, the structure contemplated by the IDEA would allow a plaintiff to keep his claims together, in the same administrative proceeding, rather than being immediately forced into the expensive process of enforcing his partially overlapping but distinct federal rights on separate tracks.

The court is skeptical that the Tennessee General Assembly intended to enact jurisdictional limitations inconsistent with the IDEA's exhaustion requirement. There is, however, another option that is also consistent with the governing statutory language. Although the last sentence of section 49-10-606(a) may be amenable to a narrow reading, the first sentence provides, more generally, that "[s]pecial education due process cases shall be heard by administrative law judges employed by the secretary of state." The phrase "special education due process cases" can easily be construed to encompass both IDEA claims and other claims that are required, by the IDEA, to be treated procedurally as the equivalent of IDEA claims. Moreover, even the language on which Genesis relies discusses cases "arising under" the IDEA, not only causes of action *created by* the IDEA. ADA and Section 504 claims subject to IDEA exhaustion are explicitly, textually addressed by the IDEA and governed by its provisions. Such claims, accordingly, could be fairly characterized as "arising under" the IDEA, even if they were not created by it. Indeed, the phrase "arising under" is most often invoked in the area of federal subject matter jurisdiction, where it is well settled that its definition is broader than merely "created by." *See Eastman v. Marine Mech.*

---

[7] The Supreme Court, in *Fry*, expressly declined to address the effect of the remedies sought on whether § 1415(l) applies to a claim. 137 S. Ct. at 752 n.4.

*Corp.*, 438 F.3d 544, 550 (6th Cir. 2006) (discussing paths for showing that a cause of action "arises under" federal law). In light of the ambiguous language of section 49-10-606(a), the statutory scheme as a whole, and Tennessee's plain intent to comply with the IDEA, the court construes the statute as granting jurisdiction over not only IDEA claims but also any federal claims required by 20 U.S.C. § 1415(l) to be exhausted via the IDEA process.

### 2. Whether P.G.'s Claims Against Genesis are Subject to IDEA Exhaustion

Section 1415(l) and the case law interpreting it are the results of a lengthy process of Congress and the courts attempting to determine how the various federal statutes relevant to special education interact. In 1984, the Supreme Court held, in *Smith v. Robinson*, 468 U.S. 992 (1984), that the IDEA's predecessor statute was "the exclusive avenue through which a plaintiff may assert an equal protection claim to a publicly financed special education" and, by extension, any other overlapping federal claims. *Id.* at 1009. The plaintiff had brought an equal protection claim pursuant to 42 U.S.C. § 1983, on the ground that the defendant—the Commissioner of Education for the plaintiff's home state—had deprived him of his federal constitutional right to equal protection under color of law in the state's administration of his special education. Section 1983 would seem, on its face, to reach such an allegation. The Court, however, held that, "[i]n light of the comprehensive nature of the procedures and guarantees set out in the" IDEA's predecessor statute, Congress had implicitly foreclosed a child or his parents from pursuing overlapping special education-related claims via other federal statutes. *Id.* at 1011.

Congress responded to *Smith* by enacting the Handicapped Children's Protection Act of 1986, 100 Stat. 796, which included the exhaustion language currently found in 20 U.S.C. § 1415(l). Under the subsection, as currently in force, "[n]othing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA],

[Section 504], or other Federal laws protecting the rights of children with disabilities," with one exception: "that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under this subchapter." 20 U.S.C. § 1415(l).

Courts, including those in this circuit, have sometimes struggled to determine what it means for a claim to "seek[] relief that is also available under" the IDEA. The IDEA takes a "flexible approach" to remedies, *Bd. of Educ. of Fayette Cty., Ky. v. L.M.*, 478 F.3d 307, 316 (6th Cir. 2007), allowing a court to "grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). That flexibility, however, goes to the means, not the ends, of the remedies that may be granted under the IDEA. Because claims under the IDEA arise as appeals of administrative proceedings, the relief available is largely the same as the administrative officer could have provided, and "[t]he only relief that an IDEA officer can give . . . is relief for the denial of a FAPE." *Fry*, 137 S. Ct. at 753. Other types of injuries, however—such as those that would be covered by general money damages—fall outside the FAPE framework and, accordingly, outside the IDEA. *See Somberg ex rel. Somberg v. Utica Cmty. Sch.*, 908 F.3d 162, 177 (6th Cir. 2018) ("True enough, this court has interpreted Supreme Court precedent to hold that money damages are not available to remedy violations of the IDEA.") (citing *Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 980 F.2d 382, 386 (6th Cir. 1992)). In this case, P.G. seeks both money damages—which he cannot recover under the IDEA—and declaratory and injunctive relief that more closely mirrors the type of remedies typically granted under the IDEA.

The Supreme Court recently clarified, in *Fry v. Napoleon Community Schools*, how a court should determine if a non-IDEA federal claim "seek[s] relief that is also available under" the

IDEA. In that case, the plaintiff, a disabled child with cerebral palsy, had sought but been denied permission to have her service dog accompany her in the classroom. 137 S.Ct. at 751. She and her parents sued the "local and regional school districts in which [her elementary school was] located, along with the school's principal" under the ADA and Section 504. *Fry*, 137 S. Ct. at 751–52. Like P.G., they sought declaratory relief and money damages. *Id.* at 752. The district court dismissed the claims for failure to exhaust, and the Sixth Circuit affirmed, applying the rule that exhaustion was required whenever "'the genesis and the manifestations' of the complained-of harms were 'educational' in nature." *Id.* at 752 (quoting *Fry v. Napoleon Cmty. Sch.*, 788 F.3d 622, 627 (6th Cir. 2015)). The Supreme Court vacated the Sixth Circuit's decision and repudiated the Sixth Circuit's approach as overly broad. Instead, the Supreme Court announced two principles for guiding the determination of whether to require exhaustion under § 1415(l):

> We first hold that to meet [the § 1415(l)] statutory standard, a suit must seek relief for the denial of a FAPE, because that is the only "relief" the IDEA makes "available." We next conclude that in determining whether a suit indeed "seeks" relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint.

*Id.* at 752. Under *Fry*, "[w]hat matters is the crux . . . of the plaintiff's complaint, setting aside any attempts at artful pleading." *Id.* at 755.

P.G. has claimed that he was subject to restraint and isolation in violation of SEBSA, a special education statute that has been incorporated into the definition of "FAPE." While it is true that providing a FAPE is not, under the IDEA, Genesis's statutory responsibility, the legal basis of Genesis's role in the underlying events has no bearing on the nature of the harm that P.G. has alleged and from which he seeks relief. *Fry* "treats the plaintiff as 'the master of the claim,'" with the right to "identif[y] [the claim's] remedial basis" and state a claim that is "subject to exhaustion or not based on that choice." *Id.* at 755 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392

(1987)). P.G. has, by couching his claims in terms of the denial of his substantive rights under the IDEA, satisfied the threshold requirement that his claims seek relief for the denial of a FAPE.

It is still possible for a claim to fall outside § 1415(l) under *Fry*, despite the plaintiff's having alleged a denial of a FAPE, if something other than the denial of the FAPE forms the gravamen of the claim. In making that assessment, the court "should attend to the diverse means and ends of the statutes covering persons with disabilities—the IDEA on the one hand, the ADA and Rehabilitation Act (most notably) on the other." *Id.* at 755. In other words, the gravamen of a plaintiff's claim is relative—the only ground for concluding that the gravamen is not under the IDEA is if some *other* cause of action better captures the core of the plaintiff's case. Generally speaking, the gravamen of a claim will be under the IDEA if the claim "is in essence contesting the adequacy of a special education program." *L.G*, 2019 WL 2419021, at *3 (quoting *Fry*, 137 S.Ct. ay 755).

The only basis that Genesis has articulated for concluding that the gravamen of P.G.'s claim is under the ADA or Section 504, rather than the IDEA, is that Genesis is not an educational agency. That issue, though, goes to the merits of the claim, not the nature of the harm alleged. If P.G. had been subject to the exact same treatment—only by public school teachers rather than employees of a contractor—there would be little doubt that the gravamen of his claims are for the denial of a FAPE. The insertion of Genesis as a contractor may have changed the underlying legal relationships, but the ultimate focus of all of those relationships was still the provision of a FAPE. The obligations assumed by Genesis under the contract frequently mirrored, almost verbatim, an educational agency's obligations under the IDEA. The company even specifically agreed to ensure that its students would have the same rights to administrative due process as those in the county's public schools. (Docket No. 10-1 at 5.) Regardless of whether the IDEA itself would permit relief

against Genesis, it is plain that the crux of what P.G. has alleged is a denial of a FAPE—simply one accomplished via a contractual intermediary.

*Fry*, admittedly, did not explicitly address the issue of whether its test should apply to claims brought against private contractors. This court, however, is not inclined to carve an exception out of a rule so recently announced by the Supreme Court without some solid basis for doing so. Moreover, one of the defendants in *Fry* was, in fact, a person or entity other than an SEA or LEA—namely, the principal of the plaintiff's school—although that fact admittedly did not play a significant role in the Court's analysis. *Id.* at 752. The Supreme Court simply grouped the principal in with the other defendants collectively, despite the fact that a principal, like Genesis, would not meet the statutory definitions of an SEA or LEA. *Id.* It is difficult, then, to see how this court could conclude that *Fry* applies only to SEAs and LEAs.

One might argue that, despite the presence of an individual defendant in *Fry*, a claim against a non-educational agency cannot be one "seeking relief that is also available under" the IDEA, 20 U.S.C. § 1415(l), because the IDEA would allow no claim against, and thus no relief from, that defendant. That reasoning, though, becomes tenuous when the relief sought is declaratory or injunctive. A declaration that Genesis failed in its responsibilities *is*, in fact, a form of relief that is available under the IDEA, even if the defendant in such a case would be the county schools and the declaration would be that Genesis's failure was Rutherford County's as well. Similarly, injunctive relief against the county schools could lead to changes in an IEP, and a contractor would then have a duty to follow that IEP that would mirror what its duties would have been under an injunction directed explicitly at it. A contractor's decision to enmesh itself in a school district's special education program means that it may, in effect, be subject to duties or declarations granted pursuant to the IDEA, even if the company itself is not subject to IDEA suit.

The IDEA requires administrative exhaustion because "[t]he federal courts are not the entities best equipped to craft an IEP or remedial substitutes. They are, instead, suited to reviewing detailed administrative records, such as those that would be furnished through due process hearings . . . under the IDEA." *Long v. Dawson Springs Indep. Sch. Dist.*, 197 F. App'x 427, 433–34 (6th Cir. 2006)). Nothing about that rationale changes simply because a school district has decided to rely on contractors to perform some of its IDEA responsibilities. The efficient creation of an adequate administrative record would be best served by involving all of the key parties in the administrative proceedings, including the entity that actually educated the child. There is, moreover, little that would be accomplished by this court's considering P.G.'s claims against Genesis prematurely, while the matters at the heart of his claims remain pending with the administrative law judge. If the text of the IDEA or Tennessee's jurisdictional statutes clearly foreclosed P.G.'s position, those prudential concerns would have little weight. Given the ambiguity of the relevant language at both the state and federal levels, the court will choose the interpretation most consistent with the purposes of the IDEA scheme and the most recent guidance of the Supreme Court. The court, accordingly, concludes that P.G.'s Section 504 and ADA claims against Genesis are of the type intended, by § 1415(l), to be subject to the same administrative exhaustion requirement that would face an IDEA claim against Rutherford County under the same facts. The court will, therefore, grant P.G.'s motion and remand the matter to the administrative law judge for further proceedings consistent with this opinion.

## IV. CONCLUSION

For the foregoing reasons, P.G.'s Motion to Determine Jurisdiction (Docket No. 10) will be granted, the dismissal of P.G.'s ADA and Section 504 claims by the administrative law judge will be reversed, and the claims will be remanded for further consideration.

An appropriate order will enter.

ENTER this 18th day of July 2019.

ALETA A. TRAUGER
United States District Judge